UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JULIE J.,                           )
                                    )
            Plaintiff,              )
                                    )
      v.                            )          No. 1:20-cv-01597-SEB-DLP
                                    )
ANDREW M. SAUL,                     )
                                    )
            Defendant.              )

## REPORT AND RECOMMENDATION

Plaintiff Julie J. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d). For the reasons set forth below, the Undersigned recommends that the ALJ's decision denying the Plaintiff benefits be **AFFIRMED**.

## I.    PROCEDURAL HISTORY

On August 16, 2016, Julie filed her application for Title II Disability Insurance Benefits ("DIB"). (Dkt. 11-3 at 12, R. 302). Julie alleged disability resulting from physical and psychological impairments. (Dkt. 1 at 2, R. 2). The Social Security Administration ("SSA") denied Julie's claim initially on December 1, 2016, (Dkt. 11-4 at 2, R.329), and on reconsideration on June 13, 2017, (Dkt. 11-4 at 9, R. 336). On June 19, 2017, Julie filed a written request for a hearing, (Id. at 17, R. 344), which was granted. (Id. at 20, R. 347).

1

On March 18, 2019, Administrative Law Judge ("ALJ") Timothy Turner conducted a hearing, where Julie and vocational expert Matthew Lampley appeared in person and by phone, respectively. (Dkt. 11-2 at 213, R. 212). On April 8, 2019, ALJ Turner issued an unfavorable decision finding that Julie was not disabled. (Id. at 231, R. 230). Julie appealed the ALJ's decision and, on January 31, 2020, the Appeals Council granted Julie's request for review for the purposes of correcting Julie's date last insured and correcting the Dictionary of Occupational Titles code number for the occupation of warehouse manager. (Dkt. 11-2 at 5-6, R. 4-5). Neither change affected the decision about whether Julie was disabled on or before the date the ALJ decided the case. (Id.). On April 6, 2020, the Appeals Council denied Julie's claim, adopting the reasoning of the ALJ's decision. (Id. at 8, R. 7). Julie now seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB only after she establishes that she is disabled. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she cannot

engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520(a). The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 404.1520 (a negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v.*

*Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id*. at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id*. The Commissioner must then establish that the claimant – in light of her age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v.*

*Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Julie is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the

path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

## III. BACKGROUND

### A. Factual Background

Julie was fifty-eight years old as of her December 21, 2014 alleged onset date. (Dkt. 11-3 at 2, R. 292). She has a twelfth-grade education. (Dkt. 11-3 at 12, R. 302). She has relevant past work history as a warehouse manager. (Dkt. 11-2 at 230, R. 229).

### B. ALJ Decision

In determining whether Julie was qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a), 416.920(a) and concluded that Julie was not disabled. (Dkt. 11-2 at 213, R. 212).

At Step One, the ALJ determined that Julie did not engage in substantial gainful activity from her alleged onset date, December 21, 2014, through her date last insured, December 31, 2018. (Dkt. 11-2 at 215, R. 214).[1]

At Step Two, the ALJ found that Julie suffered from "the following severe impairments: degenerative disc disease and fibromyalgia." (Dkt. 11-2 at 215, R. 214). The ALJ also found that hypertriglyceridemia, hyperlipidemia, and sleep apnea were non-severe impairments. (Id.) The ALJ also determined that Julie's

---

[1] While the Appeals Council extended Julie's date last insured to December 31, 2019, this change did not affect the decision of whether Julie was disabled on or before the date of the ALJ's decision, which was April 8, 2019. (Dkt. 11-2 at 6, R. 5).

"medically determinable mental impairment of an affective disorder" was non-severe. (Dkt. 11-2 at 216, R. 215). Finally, the ALJ found that Julie had non-medically determinable impairments of neuropathy and gastroesophageal reflux disease ("GERD"). (Dkt. 11-2 at 217, R. 216).

In determining whether Julie's affective disorder limited her ability to work, the ALJ considered the SSA's "paragraph B" criteria which consist of four areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that Julie had mild limitations in all four of these areas. (Dkt. 11-2 at 215-17, R. 214-16).

Even though Julie reported problems with completing tasks, talking on the phone, and concentration and memory, the ALJ found that Julie had a mild limitation with understanding, remembering, or applying information. (Dkt. 11-2 at 216, R. 215). To support this finding, the ALJ relied on the Plaintiff's ability to manage her finances, lack of difficulties with self-care, her reports of always paying attention, and medical evidence from the record which found normal affect, normal speech, normal thought content/perception, no impairment of attention, and no impairment of long-term memory. (Id.). Julie had a mild limitation in interacting with others, the ALJ found, because during the consultative examination the Plaintiff's affect was euthymic and appropriate to the topic of conversation, she made good eye contact, and she engaged in appropriate social interaction. (Dkt. 11-2

at 216, R. 215). In addition, Julie was cooperative during medical visits as well as social with others at public events, at others' home, and by talking on the phone. (Dkt. 11-2 at 216, R. 215). In the area of concentrating, persisting, or maintaining pace, the ALJ also found only a mild limitation. (Dkt. 11-2 at 216, R. 215). The ALJ noted that Julie reported that she was able to drive for short distances, shop in stores, by computer, and over the phone. (Id.) The ALJ also found only a mild limitation in adapting or managing oneself because Julie reported being able to travel, being able to perform household activities, and indicated no problems with maintaining her personal care and hygiene. (Dkt. 11-2 at 217, R. 216). In sum, the ALJ found that Julie's affective disorder caused "no more than [a] 'mild' limitation in any of the functional areas." (Id.).

At Step Three, the ALJ found that Julie's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Dkt. 11-2 at 217, R. 216 (citing 20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526)).

After Step Three but before Step Four, the ALJ determined that Julie had the RFC to "perform light work," with the following additional limitations:

- Lifting 20 pounds occasionally and 10 pounds frequently;

- Carrying 20 pounds occasionally and 10 pounds frequently;

- Sitting, standing, and walking for 6 hours;

- Pushing and pulling as much as she can carry;

- Performing frequent bilateral overhead reaching, with occasional climbing of ramps, stairs, ladders, ropes, and scaffolds;

- Occasionally balancing, stooping, and crouching; and

- Performing frequent cervical spine flexion and extension.

(Dkt. 11-2 at 218-19, R. 217-18).[2]

At Step Four, the ALJ found that Julie was capable of performing her past relevant work as a warehouse manager, as it is generally performed. (Dkt. 11-2 at 231, R. 230). The ALJ concluded that Julie was not disabled. (Id.).

## IV.  ANALYSIS

Julie raises two arguments on appeal. First, Julie argues that the ALJ erred in failing to adequately account for the mild limitations caused by her mental impairments in his RFC assessment and with hypotheticals posed to the vocational expert ("VE"). (Dkt. 16 at 1-2, 12-15). Second, Julie contends that the ALJ erred in assessing her subjective symptoms. (Dkt. 16 at 15-20; Dkt. 21 at 5). The Undersigned will consider these arguments in turn below.

### A. Unsupported RFC and Hypothetical

#### i.  RFC Assessment

First, Plaintiff maintains that because the ALJ found mild mental limitations at Step Two of the disability analysis, the ALJ was required to include those limitations in his RFC finding or fully account for them, both of which the Plaintiff

---

[2] The Appeals Council determined the same RFC as the ALJ and adopted the ALJ's reasoning. (Dkt. 11-2 at 6-7, R. 5-6).

believes the ALJ failed to do.[3] In response, the Commissioner maintains that the ALJ's assessment of Julie's RFC is supported by substantial evidence and adequately accommodates Julie's limitations supported by the medical record. (Dkt. 19 at 12-13). Specifically, the Commissioner argues that because the ALJ found that Julie's mild mental limitations did not affect her work functioning, the ALJ was not obligated to impose mental work limitations in the RFC. (Dkt. 19 at 10).

When crafting a claimant's RFC, an ALJ is required to consider every medically determinable impairment and limitation, even those that are not severe in isolation. *Murphy v. Colvin*, 759 F.3d 811, 820 (7th Cir. 2014); 20 C.F.R. §§ 404.1545(a)(2), (e). A failure to fully consider the impact of non-severe impairments requires reversal. *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). The ALJ must build a logical and accurate bridge between the evidence of those impairments and limitations and his ultimate RFC determination. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

In the SSA's five-step disability inquiry, there is no one-to-one relationship between impairment findings found at Step Two and the functional limitations determined in an RFC. *See* 20 C.F.R. § 404.1545(a)(1) ("impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting"); SSR 96-8P, 1996 WL 374184, at *1 (distinguishing between a claimant's "functional limitations and restrictions" and their "medically determinable impairment or combination of impairments"). As the

---

[3] As noted by the Plaintiff, the Appeals Council adopted the findings of the ALJ.

ALJ noted at Step Two, "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at [S]teps 2 and 3 of the sequential evaluation process. The mental residential functional capacity assessment used at [S]teps 4 and 5 . . . requires a more detailed assessment" of various functions. (Dkt. 11-2 at 217, R. 216). Thus, an ALJ's finding of a mild mental impairment at Step Two may not equate into a work functional limitation in the RFC assessment. *See Felts v. Saul*, 797 F. App'x 266, 268-70 (7th Cir. 2019); *Sawyer v. Colvin*, 512 F. App'x 603, 611 (7th Cir. 2013); *Carter v. Colvin*, No. 1:15-cv-1595-SEB-TAB, 2016 WL 4471661, at *4 (S.D. Ind. July 29, 2016), *R. & R. adopted*, 2016 WL 4471879 (S.D. Ind. Aug. 23, 2016).

Here, at the Step Two analysis, as noted above, the ALJ found that Julie had mild limitations in each of the four "paragraph B" criteria; the ALJ supported this conclusion for each category by reciting a list of Julie's activities of daily living. (Dkt. 11-2 at 216-17, R. 215-16). During the Step Four analysis, however, the ALJ considered these mild mental limitations and found they did not warrant functional mental limitations in the RFC. First, the ALJ reviewed Julie's symptoms, including those related to her concentration, memory, attentiveness, and understanding. (Dkt. 11-2 at 221, 223 R. 220, 222). Next, the ALJ noted that Julie was able to complete some household chores, manage her finances, drive for short distances, shop in stores, online, and by phone, and interact socially with others. (Dkt. 11-2 at 220, R. 219)  Then, the ALJ extensively considered Julie's medical records summarizing a

11

medical source report from Dr. Barker, (Dkt. 11-2 at 227-28, R. 226-27), the November 12, 2016 psychological consultative examination report from Dr. David Fingerhut, (Id. at 228-29, R. 227-28), the 2016 and 2017 state agency determinations. (Id. at 229-30, R. 228-29), and her recent mental health records from 2018 and 2019 (Dkt. 11-2 at 226-227, R. 225-26).

On April 29, 2016, Dr. Barker completed a physical medical source statement which diagnosed Julie with fibromyalgia and cervical spondylosis. (Dkt. 11-8 at 48, R. 1032). He noted that Julie's depression and anxiety affected her physical conditions, but that he was unable to assess her functional limitations objectively at the time. (Dkt. 11-8 at 49, R. 1033). Yet, Dr. Barker concluded that Julie was unable to tolerate even "low stress" work due to pain. (Dkt. 11-8 at 51, R. 1035). Dr. Barker opined that Julie would need to miss more than 4 days of work per month because of her impairments and treatment. (Dkt. 11-8 at 56, R. 1040). The ALJ gave Dr. Barker's opinion partial weight because of the more recent evidence in the record. (Dkt. 11-2 at 228, R. 227).

In his November 12, 2016 consultative examination report, Dr. Fingerhut reported that Julie had a prior history of hair pulling which was diagnosed as obsessive-compulsive disorder and treated with medication. (Dkt. 11-7 at 391, R. 923). Julie reported her brief episodes of negative moods and her pain medication history to Dr. Fingerhut. (Dkt. 11-7 at 388, 391, R. 920, 923). During the mental status examination, Dr. Fingerhut noted that Julie's affect was euthymic and appropriate to the topic of conversation, that she made good eye contact, she

engaged in appropriate social interaction, and appeared to have average intelligence. (Dkt. 11-7 at 389, R. 921). Dr. Fingerhut also reported that Julie stated that it was her pain and not her mental health symptoms that affected her ability to complete daily tasks. (Dkt. 11-7 at 391, R. 923). Dr. Fingerhut found Julie's judgment and insight to be intact and her cognitive functioning likely to be average. (Id.). Dr. Fingerhut assigned no psychological diagnosis, but he did diagnose Julie with Somatic Symptom Disorder. (Dkt. 11-7 at 391, R. 923). Relying on Julie's treatment records, her reported symptoms, and the mental status examination, Dr. Fingerhut opined that Julie did not present with significant issues of depression or anxiety. (Dkt. 11-7 at 392, R. 924). In the "Medical Source Statement" portion of his assessment, Dr. Fingerhut concluded that Julie was capable of working from a psychological standpoint. (Dkt. 11-7 at 392, R. 924). Dr. Fingerhut also noted that despite Julie's physical limitations her mental health symptoms did not "appear to adversely affect her cognitive functioning, ability to complete daily functioning tasks, interpersonal interactions, or quality of life." (Dkt. 11-7 at 392, R. 924).  The ALJ gave some weight to Dr. Fingerhut's assessment when crafting Julie's RFC. (Dkt. 11-2 at 229, R. 228); *see Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019) ("[A]n ALJ may reasonably rely upon the opinion of a medical expert who translates [a claimant's limitations] into an RFC determination."); *see also Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (citing *Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir. 1987) ("All that is required is that the hypothetical question to the VE be supported by the medical evidence in the record.")).

The ALJ also gave great weight to the opinion of the state agency mental health professionals, who concluded that Julie's mental limitations were mild. (Dkt. 11-2 at 229-30, R. 228-29). On November 29, 2016, the state agency initially determined that Julie's mental impairment of affective disorder was not severe. (Dkt. 11-3 at 6, R. 296).  Upon reconsideration, on April 26, 2017, the state agency affirmed, but noted that Julie suffered from mild limitations in all four mental functioning areas. (Dkt. 11-3 at 18-19, R. 308-09). On April 5, 2018, a state agency psychological consultant, Dr. Ellen Rozenfeld, reviewed the state agency's consultative evaluation of Julie's mental impairment and affirmed its finding that Julie's mental impairment was non-severe, and that it imposed no more than a mild limitation in the four areas of functioning. (Dkt. 11-8 at 110, R. 1094).

While Dr. James Zhang noted Julie's symptoms of depression and anxiety, during her examination on January 25, 2019, he found that Julie's affect and thought content/perception were normal, that her cognitive function was appropriate, and that she did not suffer from an impairment of attention or long-term memory. (Dkt. 11-9 at 203, 204, R. 1492, 1493).

Here, the ALJ weighed the medical opinions, considered statements Julie made at the time of her treatment, reviewed her mental health treatment history, and concluded that no functional mental limitations were required in the RFC. Julie has failed to direct the Court to any treatment records or relevant medical evidence that was ignored by the ALJ or undermines his decision. *Suzanne O. v. Saul*, No. 1:20-cv-01043-RLY-TAB, 2021 WL 2269963, at *6 (S.D. Ind. May 17, 2021), R. &  R.

adopted, No. 1:20-cv-01043-RLY-TAB, 2021 WL 2256275 (S.D. Ind. June 3, 2021)

(citing *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021)). Due to the

substantial evidence supporting the ALJ's determination that no mental limitations

were warranted in the RFC, and the logical bridge built between the evidence and

the conclusion, the Undersigned recommends that the Court affirm on this issue.

### ii.  *Hypothetical Question to the Vocational Expert*

Plaintiff also argues that the RFC was defective because the ALJ's

hypothetical questions to the vocational expert did not include Julie's

mental limitations. (Dkt. 16 at 15).  The argument fails.

After the ALJ determined Plaintiff's RFC, he relied on the testimony of a

vocational expert to determine whether Julie could perform her past relevant work,

pursuant to 20 C.F.R. § 404.1520(a)(4)(iv). This determination is made based on

hypotheticals posed by the ALJ to the VE utilizing the RFC assessment. (*See, e.g.*,

Dkt. 11-2 at 230-31, R. 229-30). An ALJ's hypothetical questions must include all of

a claimant's medically determinable functional limitations supported by the medical

record. *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021) (citing *Yurt v. Colvin*,

758 F.3d 850, 857 (7th Cir. 2014) (affirming the Commissioner where a hypothetical

question did not include limitations because "they were not supported by the

medical record"); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); see also, *Jelinek

v. Astrue*, 662 F.3d 805, 813 (7th Cir. 2011) ("[T]he hypothetical questions posed by

an ALJ to a vocational expert must include only the physical and mental limitations

the judge deems credible.").

As noted above, the ALJ considered Julie's mild mental limitations and determined these impairments did not equate to a disabling limitation that needed to be accounted for in the RFC. Relying on this proper RFC assessment, the ALJ was not required to incorporate mental limitations into the hypotheticals posed to the vocational expert. Thus, with the vocational expert having a complete picture of the Plaintiff's limitations with the RFC, it was proper for the ALJ to rely on this testimony in his findings at Step Four.

The ALJ, relying on the medical records, the testimony of the vocational expert and the state agency consultants, concluded that Julie is not disabled because she can perform her past relevant work. (Dkt. 11-2 at 230-31, 262-68, R. 229-30, 261-67). Because this determination is supported by substantial evidence, the Undersigned recommends that the Court find that the ALJ has built a logical bridge between the limitations he acknowledged and the restrictions he included in the hypothetical to the VE and imposed in the RFC.

### B. Subjective Symptoms

Next, Plaintiff claims that the ALJ conducted an improper analysis of her subjective symptom allegations. Specifically, Julie argues that the ALJ did not properly evaluate her credibility as required by Social Security Ruling 16-3p. (Dkt. 16 at 16-17). In response, the Commissioner maintains that the ALJ sufficiently supported his subjective symptom assessment. (Dkt. 19 at 20).

"In evaluating a claimant's credibility, the ALJ must comply with SSR 16-3p and articulate the reasons for the credibility determination." *Karen A.R. v. Saul,*

16

No. 1:18-cv-2024-DLP-SEB, 2019 WL 3369283, at *5 (S.D. Ind. July 26, 2019). SSR 16-3p describes a two-step process for evaluating a claimant's subjective symptoms.[4] First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). Second, the ALJ must evaluate the intensity and persistence of a claimant's symptoms such as pain and determine the extent to which they limit his ability to perform work-related activities. *Id.* at *3-4.

A court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is "patently wrong." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal quotation marks and citation omitted). An ALJ must justify his subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and build "an accurate and logical bridge between the evidence and the conclusion." *Villano,* 556 F.3d at 562. The ALJ's analysis of a claimant's allegations does not need to be flawless: "[n]ot all of the ALJ's reasons must be valid as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009); *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). An ALJ's evaluation is deemed "patently wrong" and subject to remand

---

[4] SSR 16-3p became effective on March 28, 2016, (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *2, replacing SSR 96-7p, and requires an ALJ to assess a claimant's subjective symptoms rather than assessing his "credibility." By eliminating the term "credibility," the SSA makes clear that the "subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2016 WL 1119029 at *1. The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges are not in the business of impeaching a claimant's character." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).

only when the ALJ's finding lacks any explanation or support. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

When assessing a claimant's subjective symptom allegations, the ALJ must consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, at *4.  Although the Court will defer to an ALJ's subjective symptom finding that is not patently wrong, the ALJ must still adequately explain his subjective symptom evaluation "by discussing specific reasons supported by the record." *Pepper*, 712 F.3d at 367. Without this discussion, the Court is unable to determine whether the ALJ reached his decision in a rational manner, logically based on his specific findings and the evidence in the record. *Murphy*, 759 F.3d at 816 (internal quotations omitted); *see also* SSR 16-3p, at *9.

In his decision, the ALJ considered information obtained at the disability hearing on March 18, 2019. (Dkt. 11-2 at 220-21, R. 219-220). At that hearing, Julie testified that she can wash, dry, and fold laundry, but not carry the laundry if there is too much of it, (Dkt. 11-2 at 255, R. 254), that she drives, but not long distance because she tends to fall asleep, (Id. at 249-50, R. 248-49), and that she manages her finances, but her husband pays the bills. (Id. at 253, R. 252). She also stated that she can fly on an airplane with the use of a TENS unit for pain. (Id. at 258, R. 257). Julie also testified that her memory problems affect her ability to finish

18

projects on time, (Id. at 250-51, R. 249-50), and that her mental impairments inhibit her ability to maintain records, (Id. at 260, R. 259). She confirmed that she takes Duloxetine, Lamotrigine, Pindolol, Propanolol, Crestor, Pantoprazole, Intrarosa, and Ranitidine, some combination of which she believes may be affecting her memory. (Id. at 251-52, R. 250-51).

Julie further testified that the pain in her neck, back, legs, wrists, and upper arms prevents her from working. (Id. at 250, R. 249). Her back, shoulder, and arm pain causes her to only be able to sit for an hour or two before needing to stand for half an hour to an hour, (Id. at 253-54, R. 252-53); she walks slowly, but her legs mainly hurt when they are touched, (Id. at 254, R. 253); the pain in her neck limits her ability to look up, (Id. at 255, R. 254); she has problems maintaining her balance, which has caused her to trip a number of times, but not fall, (Id. at 260, R. 259); and she unintentionally drops items she is holding several times a day. (Id. at 260-61, R. 259-60). She also occasionally slurs her speech, (Id. at 261, R. 260), and has trouble sleeping due to pain and apnea. (Id. at 257-58, R.256-57).

After recognizing that Julie's impairments could reasonably be expected to cause her alleged symptoms, the ALJ concluded that Julie's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Dkt. 11-2 at 221, R.220). When assessing a claimant's subjective symptoms, ALJs are directed to "consider the consistency of the individuals own statements. To do so, [they] will compare statements an individual makes in connection with the individual's claim

19

for disability benefits with any existing statements the individual made under other circumstances." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *8. Furthermore, "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." *Id.* at *9.

In his decision, the ALJ provided several reasons for discounting Julie's subjective symptom complaints including her activities of daily living, normal mental status examinations, a lack of limiting side effects from her pain medications, and her conservative mental health treatment over the years. (Dkt. 11-2 at 221-30, R. 220-29). The Plaintiff finds fault with two of these reasons. The Plaintiff argues that the ALJ's SSR 16-3 analysis of her subjective symptom statements was insufficient because he failed to logically explain how her statements about activities of daily living were inconsistent with the evidence and, second, he failed to consider her extensive work history.

### i. Activities of Daily Living

As noted above, an ALJ is required to consider a claimant's activities of daily living in evaluating her subjective allegations. SSR 16-3p; *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("an ALJ cannot disregard a claimant's limitations in performing household activities"). Here, the ALJ discounted Julie's statements about her symptoms based on her activities of daily living:

> Regarding the claimant's daily activities, the evidence as a whole demonstrates her limitations are less severe than she alleges. Specifically, the claimant is able to manage her personal care and hygiene, attend medical appointments, shop in stores, shop online, and by phone, attend car events, travel, ride a bike, manage paperwork, perform some household chores, and go out to restaurants. Accordingly, I find the claimant's daily activities are consistent with the ability to perform work according to the aforementioned modest residual functional capacity.

(Dkt. 11-2 at 221, R. 220).

The Plaintiff contends that the ALJ failed to explain how any of these activities, alone or in combination, contradicted her subjective difficulties with sustaining full-time work. (Dkt. 16 at 17-18). As the Plaintiff pointed out, consideration of a claimant's daily activities "must be done with care." (Dkt. 16 at 17) (quoting *Roddy*, 705 F.3d at 631) (internal quotations omitted). Here, the ALJ did just that by refraining from equating Julie's daily activities with the ability to work full-time. Instead, he appropriately utilized the information of those activities to assess how much weight to give Julie's statements about the severity of her symptoms. *See Simons v. Saul*, 817 F. App'x 227, 233 (7th Cir. 2020) (affirming where ALJ discussed daily activities in the context of objective findings contravening Plaintiff's pain allegations); *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (claimant's activities of daily living are only one of many factors); *see also* SSR-16-3p, 2017 WL 5180304, at *7. Although the ALJ summarized Julie's testimony about her ability to do housework and other tasks, including traveling, exercising, and biking, he never inferred from those statements alone that Julie was capable of full-time work.

The ALJ's 16-3p analysis did not stop at considering Julie's daily activities. The ALJ also weighed evidence from multiple medical professionals, Julie's statements at the time of treatment, and her prescription history, to assess her subjective symptom statements. (Dkt. 11-2 at 221-30, R. 220-29). Because the ALJ reasonably considered Julie's description of her daily activities – visiting friends, attending car shows, shopping and completing household tasks – in assessing whether her testimony about the effects of her impairments was credible, the Undersigned recommends that the Court decline to remand on this issue.

### ii. Work History

Lastly, the Plaintiff faults the ALJ for not discussing her work history while considering her subjective symptom statements. (Dkt. 16 at 15-20). While Julie is correct that the ALJ is to consider one's work history when evaluating the intensity, persistence, and limiting effect of a claimant's symptoms, this factor is just one among many and it is not dispositive. *Loveless v. Colvin*, 810 F.3d at 508; 20 C.F.R. § 404.1529(c)(3).

Here, however, the ALJ did acknowledge the Plaintiff's work history in his opinion, albeit briefly. (Dkt. 11-2 at 220, R. 219). The ALJ noted that Julie had worked at the same place for thirty-six years and that she was a supervisor for close to thirty years of that time. (Dkt. 11-2 at 220, R. 219). Although the ALJ did not explain in detail how the Plaintiff's work history factored into his assessment of Julie's RFC, this factor is not enough to negate the substantial evidence that supports his evaluation of Julie's subjective statements concerning her symptoms.

22

As noted above, the ALJ relied on evidence of Julie's daily activities, (Id. at 221, R. 220), extensive medical evidence, (Id. at 221-27, R. 220-26), evidence of aggravating factors, (Id. at 227, R. 226), and evidence of the side effects and dosage of Julie's medication. (Id.). Accordingly, the Undersigned recommends that the Court find that the ALJ's limited consideration of Julie's work history did not render his conclusion on Julie's subjective symptoms patently wrong, and that this issue be affirmed.

## V.    CONCLUSION

For the reasons detailed herein, the Undersigned recommends that the ALJ's decision denying Plaintiff benefits be **AFFIRMED**.

Any objections to the Magistrate Judge's Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for such failure.

So RECOMMENDED.

Date: 7/12/2021

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email